ALEXANDER M. TAYLOR

*v.*

THE PUBLIC SERVICE CORPORATION OF NEW JERSEY and THE
PATERSON AND PASSAIC GAS AND ELECTRIC COMPANY.

[Decided April 26th, 1909.]

1. Under act May 22d, 1894 (*P. L. 1894 p. 477*), authorizing cities to
erect poles in the streets for public lighting without the consent of abut-
ting landowners or previous designation of the streets, a landowner cannot
restrain the placing of poles and wires in front of his premises for
transmission of electricity for public lighting.

2. A landowner may restrain the maintenance of poles and wires in
front of his premises for transmission of electricity for private lighting,
where the previous designation of the streets by the city has not been
made, and the consent of the abutting landowner has not been obtained,
as required by act May 10th, 1884 (*P. L. 1884 p. 331*), acts 1893 (*P. L.
1893 p. 412*), and acts 1896 (*P. L. 1896 p. 322*).

3. Acts May 18th, 1898 (*P. L. 1898 p. 458*), curing defects in proceed-
ings by municipalities purporting to authorize electric lighting companies
to construct and maintain lines for furnishing light, was intended to cure
irregularities and invalidities of municipal action, and did not affect the
right of a landowner, whose consent was not obtained to the construction
of a line in front of his premises as required by law, to maintain an
action to restrain the maintenance of such line.

4. Equity has jurisdiction to restrain an electric lighting company
from misusing the wires on poles in·front of complainant's premises,
restricting their use to public lighting if the company has not the right
to use them for private lighting.

Heard on bill, answer, replication and proofs in open court.

This is a bill filed by the complainant, who is the owner of
real estate in the city of Passaic, to restrain the defendants from
stringing and using certain wires, to convey electricity, on poles
in front of the complainant's property.

The issues and facts will be fully stated hereafter.

*Mr. George P. Rust* and *Mr. Arthur S. Corbin,* for the com-
plainant.

*Mr. L. D. Howard Gilmour,* for the defendants.

GARRISON, V. C.

The complainant is the owner of a tract of land fronting for about two hundred and forty feet on Central avenue in the city of Passaic, having acquired title thereto in April of 1899. Upon his land is erected a row of three-story brick stores and dwellings, the dwelling portions of which are occupied by some thirty families.

The Public Service Corporation is the lessee of the Paterson and Passaic Gas and Electric Company, which was formed by the consolidation of the Passaic Lighting Company and several other companies. The Passaic Lighting Company, in turn, was formed by the consolidation of the Passaic Gas Light Company and the Passaic Electric Light, Heat and Power Company. This last-named corporation, on the 7th of November, 1887, addressed to the common council of the city of Passaic a petition as follows :

"PASSAIC, N. J., November 7th, 1887.
"*To the Honorable the Common Council of the City of Passaic, N. J.*

"GENTLEMEN—The undersigned, representing the Passaic Electric Light, Heat and Power Company, respectfully inform your Honorable Body that the said company is prepared to establish in this City a plant for the purpose of furnishing light, heat and power for commercial, domestic and municipal purposes in the most economical and best approved methods. The said Company respectfully request from your Honorable Body the privilege of placing their lines through, over or under the streets, alleys and highways of the City of Passaic. All poles will be set subject to the approval of the Street Committee or Street Superintendent, and also subject to the consent of property holders in the vicinity of whose property the poles are to be placed. Said poles will be painted slate color, or any other desired tint.

"Soliciting a favorable consideration, your petitioners will ever pray.
"C. A. STELLING,
"*General Manager of the P..E. L. H. & P. Co.*"

On the 5th of December, 1887, this petition was returned to the petitioner because the company had not been incorporated. It was incorporated on the 18th of January, 1888, under the General Corporation act. On January 6th, 1888 (no explanation being made concerning these dates), the above petition was returned to council by Stelling, general manager, who informed

the city council that the company was now incorporated. This petition was on that day, January 6th, 1888, received and referred to the street committee, who later submitted a report the material parts of which are as follows:

"Your Committee on Streets recommend that the petition of the Passaic Electric Light, Heat and Power Company be granted, provided further, that they will do and perform all things required of them in the erection, construction and maintaining of their said plant that may be required by the City of Passaic, or any privilege that said City may demand in regard to the use of their poles by said City under a forfeiture of said privilege."

This report was, on the same day, acted upon, and the recommendations therein contained adopted.

Since whatever rights the defendants have arise out of these proceedings, and it is immaterial in which company they are vested (since no point is made respecting that), I shall hereafter refer to the owner of the right, or the claimant of the right, as the defendant.

In 1895 the defendant entered into an agreement with the city of Passaic to furnish electric lights, arc and incandescent, for lighting the streets of the said city for a term of five years.

In 1897 the defendant erected, in front of the premises described in the bill of complaint, three poles, thirty feet high and forty inches in circumference, one at the corner of Jackson street and Central avenue, one at the corner of Van Buren street and Central avenue, and a third about half-way between said streets, and on these poles strung wires for the purpose of supplying electricity for the street lights and also for lights in private houses.

At this time the property in question was not owned by the complainant, but by his predecessor in title.

These said poles have lately been removed and the wires formerly thereon placed upon an additional cross-arm on the larger poles which have been erected in their places. These last-named poles have been put, approximately, in the places of the old poles, and are fifty-three feet high and sixty inches in circumference.

In addition to the wires which had been carried on the old poles it is the intention of the defendants to place upon these

poles wires for the transmission of alternating current electric power of a voltage of over sixty-five hundred volts. This power is to be manufactured in the city of Paterson and transmitted therefrom to the company's power-house in the city of Passaic, through Central avenue, past the property of the complainant before mentioned. Said electric current is then to be distributed from said power-house throughout the city of Passaic and the various surrounding communities for public and private consumption.

The defendants have not any grant or consent from the complainant for the erection of any poles in front of his premises. No grant or consent in writing by any predecessor in title of these premises is produced or proven by the defendants.

The wires in use in front of the complainant's property carry a current of about twelve hundred volts, which is the amount needed by the company to supply their customers, municipal and individual.

The complainant contends that the carrying of sixty-six hundred volts by the high-tension system sought to be placed upon these poles will create a dangerous situation, and much proof was offered upon this point. Since I do not put my decision upon any question of the existence of a nuisance, or of a servitude imposed in addition to what the owner consented should be imposed, I do not find it necessary to pass upon the weight of the evidence or the issues presented thereby.

The complainant's position further is that the defendants, not having secured from the owner of the property at the time of the erection of the poles or at any time thereafter any consent in writing (or otherwise, so far as appears) to the erection and maintenance of these poles, they may be only erected and maintained for the purpose of carrying out the contract to light the streets; that the defendants are acting without warrant in using these poles to carry wires to supply private customers, and that there is no warrant or right for the placing upon these poles of the wires of the high-tension system to carry the sixty-six hundred volts from Paterson to Passaic and thence to the outlying communities.

The complainant, however, does not insist upon exercising his right to prevent the use of these poles or wires for private lighting, i. e., wires such as were used before the projection of the high-tension system, and which carried about twelve hundred volts. He does, however, insist upon his right that these poles shall not be used for the high-tension system.

At the time of the erection of these poles in 1897 the law was as follows: Public lighting was regulated by the act of May 22d, 1894 (*P. L. 1894 p. 477*), and a municipality might, under that act, without the consent of the abutting landowners or previous designation of streets, use the streets and erect poles or cause poles to be erected for public lighting. The acts of 1884 (*P. L. 1884 p. 331*); 1893 (*P. L. 1893 p. 412*), and 1896 (*P. L. 1896 p. 322*), applied to private lighting companies which desired to use streets for private lighting, and required the consent of the abutting landowners and the designation of streets by the city before poles could be erected. *Meyers* v. *Electric Company* (*Court of Errors and Appeals, 1899*), *63 N. J. Law (34 Vr.) 573*.

If, therefore, the defendants, by virtue of their contract and the proceedings of the municipality, had a right, as against the municipality, to erect these poles for the purposes of public lighting, the complainant, or any landowner similarly situated, could not prevent the placing of the poles, or their being used, for the purposes of public lighting. But if the company was in this position and used the poles for stringing wires for private lighting, the landowner, with respect to whose land no consent in writing had been given, had the right, by ejectment, or by resort to equity, to restrain such misuse. *French* v. *Robb* (*Court of Errors and Appeals, 1901*), *67 N. J. Law (38 Vr.) 260; Andreas* v. *The Gas and Electric Company of Bergen County* (*Vice-Chancellor Pitney, 1900*), *61 N. J. Eq. (16 Dick.) 69.*

I do not understand that the defendants seriously, if at all, deny the application and effect of the above authorities, and, in passing, it should be pointed out, I think, that the defendants are peculiarly situated in this case because of the form of their alleged municipal consent. It will be observed that in the petition presented by the company it is recited that

"all poles will be set subject to the approval of the Street Committee or Street Superintendent, and also subject to the consent of property holders in the vicinity of whose property the poles are to be placed."

The testimony is silent as to the method of the adoption by the council of the consent. The recommendation of the committee providing that the petition should be granted upon certain conditions is merely recited to have been "received and adopted." It may well be, therefore, that this company, by the municipal procedure in question, has only acquired the right, even as against the municipality, to set poles solely at places where they have obtained the consent of the abutting property owners, in accordance with their own expressed intention. However this may be, it is entirely clear that in 1897, when these poles were erected, there was not the slightest right, as against the land described in the bill, to use the poles erected in front thereof to carry wires for private lighting.

The defendant, however, contends that this situation is cured and the maintenance of the poles, as against the complainant, legalized by the act approved May 18th, 1898 (*P. L. 1898 p. 458*), the material parts of which are as follows: "All proceedings heretofore had or taken by the several municipalities of this state, purporting to authorize the construction of pole lines, to be used by electric light companies for the purposes of their business and under which pole lines have been constructed, and all contracts entered into by the several municipalities with electric light companies, in the carrying out of which pole lines have been erected by such companies, shall be taken to be legal and binding, and to have authorized the erection of such pole lines and to authorize their maintenance for public and commercial use, and the electric light companies which shall have so constructed pole lines, and placed thereon wires for the purpose of furnishing electric light in the streets of any municipality, shall be deemed to have and possess in such streets all *legal authority necessary to be secured from such municipality* in order in such streets to lawfully construct, reconstruct and maintain such pole lines and wires, with proper appliances for the supplying of light for public or commercial use."

The act of 1894 (*P. L. 1894 p. 477*) provided that the governing body might, by ordinance or resolution, provide for the lighting of streets, and, as we have seen, it was under this act that the company's right to maintain poles in the streets without the consent of the abutting landowners was vindicated. *Meyers* v. *Electric Company, supra; French* v. *Robb, supra.*

It does not appear, as I have just pointed out, in the case at bar that the municipal proceeding was either by ordinance or resolution—apparently it was by motion only that the alleged consent of the municipality was given. In this very case, therefore, there was a condition which probably existed in many other instances in which proper proceedings to grant "the legal authority necessary to be secured from the municipality" had not been had.

In my view, the act in question was intended to cure such irregularities or invalidities of municipal action, and had no reference to and did not affect those cases in which the consent of abutting property owners was required. It seems to me that if it had been the intention to deal with the rights of private individuals rather than the rights of the public represented by the municipality, there would have been some reference at least to such private rights. I do not see why there would not have been a direct reference and direct legislation with respect thereto. If the act had intended to legalize, as against abutting property owners, poles to be used for private lighting and which had been erected on their property without their consent, it would have said so. It does nothing of the sort. It legalizes poles erected under contracts with municipalities and by reason of proceedings in municipalities in so far as the legality of such municipal proceedings are concerned. It, therefore, serves to save to this defendant the right, as against the city of Passaic, to maintain these poles in the streets for public lighting, notwithstanding the irregularity or invalidity of the action of the city in not acting by ordinance or resolution. It does not, in my view, affect at all the rights of a non-assenting abutting property owner with respect to the poles placed opposite his property, and leaves him, as he was before, entitled to object to their use for any purpose other than public lighting.

It is argued by the complainant that even if the act of 1898 had attempted to deprive the abutting property owner of his right in cases where he had not consented to the use, such attempt would be futile because unconstitutional, and authorities are cited for this position, among them *Andreas* v. *The Gas and Electric Company of Bergen County, supra.* To this the response of the defendant is that the dedication of the street to public purposes deprives the landowner of the right to object to erections placed therein by municipal consent, provided such erections are used for public purposes and are proper for such use in streets.

I do not pass upon this question because of my finding above stated, that the act of 1898 was not intended and does not properly express any intention to legislate at all with respect to the rights of private landowners, but merely seeks to make effective, as against the municipality or anyone objecting on behalf of irregular proceedings of the municipality, whatever was done to vest the legal rights necessary to be secured from the municipality to maintain poles then erected. If this were not so, the unanimous decision of the court of errors and appeals in the case of *French* v. *Robb, supra,* would not have been what it was. In that case the municipal proceedings were taken on the 30th of November, 1897, and the pole was renewed in 1899, so that it undoubtedly was originally erected before the act of 1898; and if the effect of the act of 1898, above stated, was to legalize the poles erected theretofore, as against a non-assenting abutting landowner, the plaintiff in that case would not have succeeded in his ejectment against the right of the company to use the pole for private lighting as the court of errors and appeals decided that he should succeed.

While the court does not refer to the act of 1898, it is quite obvious that if it had considered that act as applicable it would have referred to it. By silence it is decided that the act of 1898 did not legalize the erection of the pole as against the private landowner, excepting for municipal purposes, and that as to its use for private lighting, he had the right to bring ejectment and to restrain such misuse by action in equity.

The defendants in this suit did not by demurrer raise any question of the propriety of equity taking jurisdiction, and besides the direct statement of the court of errors and appeals in *French* v. *Robb, supra,* it seems clear on reason and authority that this court has jurisdiction to restrain the misuse of the pole by the defendants. *French* v. *Robb, supra; Andreas* v. *The Gas and Electric Company of Bergen County, supra.*

The injunction will, therefore, go to prevent such misuse, and will prevent the using of any wires on the poles in front of the complainant's property for the high-tension system projected by the defendants.