PUBLIC SERVICE CORPORATION et al.

*v.*

TOWN OF WESTFIELD.

[Decided August 17th, 1912.]

1. Under act of May 10th, 1884 (*P. L. 1884 p. 331*) and act of April 21st, 1896 (*P. L. 1896 p. 322*), giving companies organized for supplying and distributing electricity power to use the highways and streets for poles, provided no poles shall be erected in a street of an incorporated city or town without designation by the city or town of the street in which it shall be placed being first obtained, the proviso, while not affecting poles placed in streets of a town before its incorporation, applies to any placed therein after its incorporation.

2. Act of May 18th, 1898 (*P. L. 1898 p. 458*), declaring all proceedings theretofore taken by municipalities, purporting to authorize construction of pole lines by electric companies, shall be taken to be legal and to have authorized the construction, and such companies which shall have so constructed such lines in the streets of any municipality shall be deemed to have in such streets all legal authority necessary to be secured from such municipality in order to lawfully construct and maintain such pole lines in such streets, was intended to apply to and validate only the municipal proceedings necessary for construction of such pole lines; so that poles erected in a street of a town after it was incorporated, without the necessary authority from it, were not legalized because, before it was incorporated, the township out of which the town was formed, and from which no authority was necessary, had designated all its streets for such poles.

On bill, answer, replication and proofs.

The Public Service Corporation is one of the complainants in this case, as the lessee of the other complainant, the United Electric Company, under a lease dated July 1st, 1907, for nine hundred and ninety-nine years. The United Electric Company, incorporated March 4th, 1899, under the Corporation act (Revision of 1906), was, on January 10th, 1901, consolidated under the same name with four other companies, one of which was the Consumers Light, Heat and Power Company. This latter company was incorporated in May, 1893, under the Corporation act of 1896, and on April 3d, 1900, consolidated, under the same name,

with two other companies, the Suburban Electric Company, incorporated in December, 1891, under the Corporation act of 1875, and the Union County Electric Company, incorporated under the same act in October, 1891. One object of each of these three companies consolidated by the agreement of April, 1900, was the supply and distribution of electricity for light, heat and power purposes, in the county of Union, in which the town of Westfield, the defendant, is located. In the certificate of incorporation of the Union county company and of the Suburban company, the location in which electricity is to be supplied or distributed is not specifically mentioned in the certificates, and the only special designation indicating the municipalities in which poles are to be erected arises out of the designation in the certificate of the places in which the business of the corporation is to be conducted. These certificates of the Suburban and Union county companies were made under the Corporation act of 1875 and its supplements, then in force, which required a statement of the place or places in this state or elsewhere where the business of such company is to be conducted, and the objects for which the company shall be 'formed. *1 Gen. Stat. p. 912 ¶ 11.'* The places in this state where the business of the Union county company was to be conducted was stated to be "Roselle, in the county of Union, and other places in said county," and in the Suburban company certificate to be

"the City of Elizabeth, in the County of Union, and such other counties and places in said State as said company may find it necessary for the proper and profitable conduct of its business."

The certificate of the Consumers company, made under the Corporation act of 1896 *(P. L. 1896 p. 280 § 8)*, stated that "the places in this state where the business is to be conducted are the counties of Middlesex, Union, Essex and Hudson," and also that

"the objects for which the corporation is formed are the constructing * * * maintaining and operating works with all the appliances and appurtenances for the supply and distribution of electricity for electric lights, heat and power, to counties of Middlesex, Union, Essex and Hudson, and all the municipalities contained in said counties, and to all persons, natural or artificial, residing or locating or located therein."

The right to the use of public highways for the erection of their poles and wires was first conferred upon electric companies incorporated under the act of 1875, by the supplemental act of May 10th, 1884. *P. L. 1884 p. 331 ch. 214.*

This act provides, section 1:

"That any company organized by virtue of the act to which it was a supplement for the purpose of constructing, maintaining and operating works for the supply and distribution of electricity for electric lights, heat or power, shall have full power to use the public roads or highways, streets, &c., for the purpose of erecting posts or poles on the same to sustain the necessary wires and fixtures, upon first obtaining the consent in writing of the owners of the soil, *provided however*, no posts or poles shall be erected in any street of any incorporated city or town without first obtaining from any incorporated city or town a designation of the street in which the same shall be placed and the manner of placing the same, and that the same shall be so located, as in no way to interfere with the safety or convenience of persons traveling on or over the said roads or highways, and that the public streets of any of the incorporated cities and towns of this state shall be subject to such regulations as may be first imposed by the corporated authorities of said cities and towns."

On February 6th, 1892, the Suburban company (incorporated in 1891) applied by petition to the township committee of the township of Westfield for permission to erect poles and wires on the sides of any and all streets and roads of Westfield township, for a system of electric distribution of current adapted to light, power and heat for commercial and public use, and on this petition the township committee, on March 2d, 1892, granted to the Suburban company, their successors and assigns, the right and privilege of erecting and maintaining such and so many poles and other necessary supports and fixtures as may be necessary along, over or under the streets, lanes, avenues or alleys in said township for the purpose of furnishing electric light, heat and power * * * upon certain provisos which included—*first,* that the Suburban company, its successors and assigns, shall be subject to such prudential rules and regulations as the township committee may from time to time prescribe by ordinance or otherwise, and *third,* that said poles shall be placed subject to the supervision of the township committee, and that these, with the other provisos, should be fully accepted before the resolution shall go into effect. The acceptance of the Suburban company

was duly filed. The supplement of 1884, requiring a previous designation of streets to be obtained from the "incorporated city or town," did not in express terms include townships, but this supplement was amended by the act of March 17th, 1893 (*P. L. 1893 p. 412; 1 Gen. Stat. p. 963*), so that the power to use the roads, streets and highways given to any corporation organized under the Corporation act of 1875, was made subject to the amended proviso that

"no posts or poles shall be erected in any street of any incorporated city or town, *or in any street of any township,* without first obtaining from the incorporated city or town, or from the township committee of such township a designation of the streets in which the same shall be located and the manner of placing the same," &c.

By a later act of April 21st, 1896 (*P. L. 1896 p. 322; Comp. Stat. p. 3152*), entitled "An act relating to electric light, heat and power companies," power to use the public highways of the state for the erection of poles on the same to erect necessary wires and fixtures, was given to corporations organized or to be organized under the Corporation act of 1875, for supplying and distributing electric light, heat or power, *with* the same limitations and provisos as the act of 1884, and omitting the proviso in the act of 1893, requiring the previous designation by the township committee for poles to be erected in any street of any *township*. By the fourth section of this act of 1896 relating to electric companies, all inconsistent acts and parts of acts were repealed.

On May 18th, 1898, another general act entitled "An act relating to the use of public streets by electric light, heat and power companies," was passed, by which it was, among other things, provided (*P. L. 1898 p. 458 ch. 197*), section 1, that

"all proceedings heretofore had or taken by the several municipalities of this state, purporting to authorize the construction, reconstruction and extension of subways or pole lines, to be used by electric light, heat and power companies for the purposes of their business, and under which subways and pole lines have been constructed  *  *  *  shall be taken to be legal and binding and to have authorized the construction of such subways and the erection of such pole lines, and to authorize their maintenance for public and commercial use and the electric light, heat and power companies which shall have so constructed subways or pole lines and placed therein or thereon cables or wires for the purpose of fur-

nishing electric light, heat or power in the streets of any municipality shall be deemed to have and possess in such streets all legal authority necessary to be secured from such municipality in order in such streets to lawfully construct, reconstruct and maintain such subways, pole lines," &c.

The Suburban company, after the passage of the resolution of March, 1892, proceeded to build its lines in the township of Westfield, erecting poles on Broad street, among others, in the year 1892, and from that time continued to extend its system of poles on the streets and highways of the township up to its merger with the Consumers company in April, 1900, but without any other application to or designation by the township committee. From 1892, up to the time of filing the bill (March 30th, 1909), the Suburban company, or its successors, the Consumers company, the United Electric and the Public Service Corporation have continuously maintained and operated an electric plant in the streets of Westfield.

On March 4th, 1903 (*P. L. 1903 p. 31 ch. 14*), the township of Westfield was made an incorporated town. At the time of this incorporation of the town, the United Electric Company had in operation, through Westfield, an electric line transmitting power from Cranford, on the east, to Plainfield, on the west, for which line poles were erected on several of the streets of Westfield, and for the purpose of a new transmission line between these points, the complainant lessee, in November and December, 1908, replaced some of the old poles and also placed other poles on other streets of the town. Whether between the incorporation of the town and this erection of poles on new streets in 1908 there had been any placing of poles on the streets other than those located during the township *régime,* does not appear, but no application to the town for a designation of the places for the new poles was made. On December 22d, 1908, the town council notified the complainant to remove all poles erected on Grove street, or any other street, as having been erected without the consent of the town council. The complainant declined to remove any of its poles, claiming that consent of the town to their erection was not necessary, and about January 1st, 1909, began the use of the new transmission line to Plainfield, by which it supplies electricity to light the public streets and other public

places in Plainfield and other localities along the Central railroad. On March 5th, 1909, the town notified complainant to remove thirty-nine poles erected on certain streets, specified as erected thereon without a designation from the town of the streets and the manner of placing the poles, and that on failure by the company to remove the same by April 1st, 1907, the overseer of the roads was directed to remove them. On the filing of the bill, and after a hearing, a preliminary injunction restraining the removal pending the suit was made.

*Mr. Frank Bergen,* for the complainants.

*Mr. Paul Q. Oliver,* for the defendant.

EMERY, V. C. (after statement of facts and issues).

The right of complainant to maintain the poles erected for the new transmission line through Westfield, is placed upon two grounds. The *first* is the right to use all the streets located in the territory comprised in the township of Westfield in 1891, at the time of the incorporation of the constituent companies, the Suburban and Union county companies in 1891, while the act of 1884 was in force, and all the streets in the territory of the township in 1898, when the Consumers company was organized and the law of 1896 was in force. This right, under the certificates of organization, is claimed to be, so far as the location of poles is concerned, an absolute and vested right of property arising under the acts and the certificates of incorporation, not limited by any municipal control over designation of location, in any of the streets or highways covered by the operation of their charters, except to the extent that those streets or highways were, at the time of incorporation, within the limits of then existing cities and towns. In the certificate of the Union county company the business was to be conducted at "Roselle, in the county of Union, and other places in said county," and the business of the Suburban "in the city of Elizabeth and such other counties and places in this state as said company may find it necessary for the proper and profitable conduct of its business."

The streets in which rights of location under these certificates are claimed are not in the localities specially named as the places

of doing business, and assuming that the general designations are sufficient to comply with the statutory requirements as to the places of business and the objects of the corporation, the right now claimed outside of Roselle and Elizabeth is, that under the Union county certificate that corporation received at once an absolute vested legislative right to locate its poles in all the territory of Union county not then comprised within incorporated cities and towns, and under the suburban certificate a similar right in all the territory in Union or other counties throughout the entire state not then (1891) included within the boundaries of cities or incorporated towns.

Under the Consumers company, where the object of the company was specifically stated to be the supply and distribution of electricity in the counties of Middlesex, Union, Essex and Hudson, similar vested and absolute rights of propertyship are claimed, arising on its incorporation in 1898 and extending over all the territory in these four counties, not then included within the boundaries of cities or towns therein.

If the rights given by the acts of 1884 and 1896 and the certificates of incorporation are property rights to locate poles for electric supply in territory which must be taken as specifically defined by the acts and the certificates, these rights are not subject to subsequent limitation or change by municipal act, when accepted and acted on, as they were in this case, by the erection of poles in some of the streets of the territory included in the grant for the purposes of the business specified in the charter. But manifestly rights of this extent and character must be clearly conferred. The question to be decided is the extent and operation of the grant made by the acts of 1884 and 1896, both of which acts include the proviso as a limitation on the grant itself, and in both of which the proviso must therefore be construed with the grant. This question differs essentially from the question decided in cases relied on by the complainant, where there were subsequent municipal acts revoking the designation of streets and these subsequent revocations were held to be void. *Hudson Telephone Co.* v. *Jersey City* (*Supreme Court, 1887*), *49 N. J. Law* (*20 Vr.*) *303; Phillipsburg Electric Light Co.* v. *Phillipsburg* (*Supreme Court, 1901*), *66 N. J. Law* (*37 Vr.*) *505, 507.* And in the present case, if it were clear that the acts

of 1884 and 1896 were intended to grant the rights to electric companies to use all of the public highways of the state not within the limits of cities or towns at the passage of the act or at the time of their incorporation of the companies, then the subsequent incorporation into a town of a portion of the territory clearly intended to be included within the privileges of the legislative act, would not operate on or affect the previous legislative grant. *Public Service Corporation* v. *De Grote (Vice-Chancellor Stevenson, 1905), 70 N. J. Eq. (4 Robb.) 454*. But the question here is upon the construction of the grant itself limited, as it is on its creation, by the proviso, and the grant must be read and construed with the proviso, in order to determine what rights of property or other rights were conferred. Thus read together as one grant, it appears that the legislature, so far as incorporated cities and towns are concerned, intended to make a distinction in reference to the right of electric companies to an unrestricted choice of streets for location of poles, and further intended to reserve in favor of cities and towns the right of designation of the streets for location. This being apparent, the further question of statutory construction is whether, in reserving this right to incorporated cities and towns, the legislature intended to reserve this right of designation in favor only of those cities and towns which were incorporated either at the time of the passage of the laws or at the time of the incorporation of the companies. There is no apparent reason why, as to new lines of poles erected within its territory after incorporation as a town, the newly incorporated town should not have the same privilege of designation and the same duties relating thereto as cities and towns incorporated at the passage of the acts, or at the time of the organization of the companies.

As to the lines of poles already existing at the time of the subsequent incorporation of a town and their maintenance, such incorporation of the town is subject to the previous location of poles made under direct legislative grant which has been acted on, and as to these the town has no power to revoke or control the location. Nor has the incorporated town the right to refuse to designate streets for new lines, but as the duties and rights of towns and cities relating to their streets and highways are con-

tinuous and are or may be subject to constant and changing exigencies, the exercise of a right of this character which was certainly reserved to towns incorporated at the passage of the act, should not, I think, be construed to be taken away from any towns or cities incorporated or extended in their limits subsequent to the act, unless this distinction is clearly made by the act. I cannot see any such clear intention in this act, and, on the contrary, construing the grant in connection with the proviso, the proper construction of the effect of the act is that the right to use the highways was for the sole purpose of authorizing erections therein which would otherwise have been public nuisances, and had the incidental or consequential effect of conferring property rights on the highways only to the extent that erections were made under the act; that subject to such property rights acquired by the erection, the power over highways remained in full force and effect—and that the further exercise of this power by the *proviso* in the act itself expressly conferring upon incorporated towns and cities a limited power to the extent of designation of locations within their limits was reserved in favor of all cities and towns subject only to the property rights in lines already erected and maintainable against the legislature itself.

The *second* ground upon which complainant rests its right is the enabling act of 1898. This act is relied on as a confirmation of the designation made by the township committee in March, 1892, on the application of the Suburban company. This designation extended to all the streets of the township, and its generality was no objection to its validity. *Myers* v. *Electric Company (Court of Errors and Appeals, 1899), 63 N. J. Law (34 Vr.) 573.* At the time of the passage of the act of 1898, it had not been decided by the court of errors and appeals that the "incorporated town," under either the act of 1884 or 1896, included townships, but this had been the construction of the lower courts in reference to the telegraph company statutes in which the same word "towns" was used. *Broome* v. *Telegraph Company (1887), 49 N. J. Law (20 Vr.) 624; Township of Summit* v. *New York and New Jersey Telephone Co. (1898), 57 N. J. Eq. (12 Dick.) 123. 126.* In the former case, the court of errors and appeals, in affirming the judgment, reserved decision upon this point (*50 N.*

J. Law (21 Vr.) 432, 434), and, subsequently, in East Orange
v. Suburban Electric Light and Power Co. (1899), 59 N. J. Eq.
(14 Dick.) 563, 570, &c., the appellate court decided that in the
act of 1896 the word "incorporated town" in the proviso did not
include townships, but applied only to cities and towns eo
nomine.

This act of 1898 was, on the face of it, a validating act, and
the entire act must be considered for the purpose of applying it
to the proceedings intended to be validated. Thus construed, the
act, in my judgment, was intended to apply to municipal pro-
ceedings where previous authorization by the municipality was
by law necessary for the construction of subways or pole lines,
and to validate the municipal proceedings which purported to
give this authority and which had been acted on. The clause of
the act declaring that the electric companies which had con-
structed subways or pole lines under such proceedings, should be
deemed to have all legal authority necessary to be secured from
the municipality in order to construct the subways and pole lines
in the streets is conclusive, I think, on the scope of the validating
act, and shows that the intention of the act was to validate pro-
ceedings purporting to be taken to authorize the construction,
where the municipalities had, under their charter or other laws,
the right to authorize. It was not, I think, intended to increase
the already existing power of the municipality, but to cure de-
fective proceedings purporting to act under the power to
authorize.

On neither ground, therefore, are the complainants entitled to
an injunction to restrain the removal of the new line of poles
erected without previous designation. Counsel on both sides
have argued fully the question of complainants' right to main-
tain the poles, and have submitted it for determination. Strictly,
however, the right set up by complainants is a legal right and
the equity jurisdiction is in aid of the legal right, and if they
desire to take the opinion of a court of law upon the question of
their legal rights, and will consent to appear and defend any
action at law brought by the town to enforce the removal, I will
hear an application for a continuance of the injunction pending
the settlement of the rights at law. Otherwise, the injunction
will be denied and the bill dismissed.