**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3602-22

PUBLIC SERVICE
ELECTRIC AND GAS
COMPANY,

      Plaintiff-Respondent,

v.

TOWN OF WESTFIELD,

      Defendant-Appellant.

_____

Argued November 4, 2024 – Decided April 14, 2025

Before Berdote Byrne and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1092-22.

Scott D. Salmon argued the cause for appellant (Jardim, Meisner, Salmon, Sprague & Susser, PC, attorneys; Thomas C. Jardim, of counsel; Kenneth L. Winters, on the briefs).

Natalie F. Dallavalle argued the cause for respondent (PSE&G Services Corporation, attorneys; Natalie F. Dallavalle and Paige Nestel, on the brief).

PER CURIAM

The Town of Westfield appeals from the trial court's order awarding summary judgment to Public Service Electric and Gas Company ("PSE&G") and finding Westfield's ordinance, number 2022-04, (the "Ordinance") is partially preempted by state law, specifically Chapter 48 of the New Jersey statutes. On appeal, Westfield contends, for the first time, that the trial court applied the wrong legal test to invalidate its ordinance by using an as-applied rather than facial-challenge analysis. Westfield also argues summary judgment was improper because the trial court impermissibly ruled on a genuine issue of material fact: whether the route chosen for PSE&G's Union County Project (the "Supplemental Project") was essential.

We affirm the trial court as we agree. In re PSE&G[1] is directly on point, and requires the partial preemption of Westfield's Ordinance to the extent it conflicts with state and federal law. PSE&G did not seek relief from the trial court on the basis of the unconstitutionality of the Ordinance on either an as-applied or facial basis. Rather, it requested the court find the Ordinance was preempted by relevant sections of Chapter 48 of the New Jersey statutes. Therefore, Westfield's argument regarding whether an as-applied or facial

---

[1] In re Public Service Electric & Gas Co., 35 N.J. 358, (1961).

A-3602-22

analysis should have been applied is irrelevant to the issue of preemption. Westfield's second argument is also improperly before us. Whether the route chosen for the supplemental project was essential was not raised before the trial court. Regardless, the route chosen by PSE&G has no relation to the Ordinance's attempt to control the height of transmission line poles.

I.

PSE&G is New Jersey's largest electric utility provider, serving approximately 2.3 million customers in New Jersey. It is subject to both state regulation by the Board of Public Utilities ("BPU"), and federal regulation by the Federal Energy Regulatory Commission ("FERC") through its delegated authority to PJM Interconnection, LLC ("PJM"). See N.J.A.C. 14:5-1.1; N.J.A.C. 14:5-2.1. As a public utility operating pursuant to Chapter 48 of the New Jersey statutes, one of PSE&G's primary obligations is to "furnish safe, adequate and proper service" across New Jersey. N.J.S.A. 48:2-23; N.J.A.C. 14:3-3.1. To meet this statutory obligation, in 2007, PSE&G initiated an upgrade of existing 26kV power lines—first installed in the 1920s—with 69kV power lines (the "2007 Project"). These higher-voltage lines are intended to address New Jersey's dramatic increase in population and electricity reliance over the preceding one hundred years, as well as meet projected increases in

demand for the foreseeable future. It is undisputed PSE&G has installed more than 575 miles of 69kV power lines in almost one hundred municipalities since 2007, including nine municipalities in Union County serving approximately 25,000 customers. The only unfinished portion at the time of this appeal was a five-mile stretch in Westfield.

PSE&G's statewide initiative is, in turn, part of a broader multistate effort governed by federal law and regulations that seeks to prevent the loss of electric power exceeding twenty-four hours to utility customers nationwide. In 2017, PJM, on behalf of FERC, determined PSE&G's existing transmission lines supplying electricity to two Union County substations were in violation of several federal reliability criteria. PSE&G responded by creating a plan to enhance and strengthen its existing statewide initiative (the "2017 Project"), which PJM approved on behalf of FERC. The 2017 Project requires PSE&G to replace existing thirty-five-feet-tall utility poles with poles ranging from between sixty-five and seventy-five feet in height. The National Electrical Safety Code mandates poles carrying 69kV power be between sixty-five and seventy-five feet in length to meet certain minimum spacing requirements separating the lines.

A-3602-22

While implementing the 2017 Project, PSE&G identified additional local reliability concerns in and around Westfield, specifically at the nearby Clark substation. Because a failure at the Clark substation would negatively affect service to the surrounding area, including service to Westfield, PSE&G initiated the Supplemental Project to ensure overall reliability to its customers. PSE&G determined five possible routes to effectuate the Supplemental Project. The original route went through a residential area and was opposed by Westfield. PSE&G accommodated Westfield's concerns by amending the Supplemental Project to bypass the original residential area and proceed along South Avenue before turning onto Central Avenue. PSE&G determined this route would entail the shortest amount of permitting time, require significantly fewer easements than other possible routes, and was the most cost-effective alternative route, despite adding an additional seven million dollars in costs from the original route.

Westfield adopted the Ordinance at issue on February 22, 2022. See Westfield, N.J., Ordinance 2022-04 (Feb. 22, 2022). Although the Ordinance states its primary purpose is directed at "Small Wireless Facilities within the public right-of-way," its "secondary purpose . . . is to better manage access and use of its rights-of-way by traditional utilities." Ibid. The Ordinance requires a

utility company obtain a right-of-way permit and agreement prior to the placement of any utility pole within the public right-of-way. Ibid. No permit or agreement is required, however, if the utility company replaces an existing pole with a replacement that is "substantially identical to, or smaller" in both height and diameter. Ibid. The Ordinance also provides that "[n]o proposed [p]ole shall be taller than thirty-five (35) feet or one[-]hundred[-]ten (110%) percent of the height of [p]oles in the [s]urrounding [s]treetscape, whichever is higher." Ibid.

The Ordinance does, however, have exceptions:

> [E]xceptions from findings that would otherwise justify denial[] may be granted by the Administrative Review Team if the Administrative Review Team makes the finding that:
>
> > (1) Denial of the facility as proposed would violate federal law, state law, or both; or
> >
> > (2) A provision of this Chapter, as applied to an applicant, would deprive the applicant of its rights under federal law, state law, or both.
>
> [Ibid.]

On April 8, 2022, PSE&G filed a complaint in lieu of prerogative writs against Westfield, seeking to invalidate various sections of the Ordinance on preemption grounds, specifically by operation of several provisions in Title 48

of the New Jersey statutes and its accompanying regulations. The complaint also sought invalidation of the Ordinance on the basis that it is arbitrary, capricious, and unreasonable.

Both parties subsequently moved for summary judgment, which the trial court granted in favor of PSE&G, voiding eight subsections of the Ordinance: subsections 17-3.1(a), -3.1(c), -3.3(b)(1), -3.3(b)(3)(a)– to (b), -3(b)(3)(i), -3.4(a), and -3.6(a).[2] Westfield sought stays before the trial court and this court, both of which were denied. This appeal followed.

II.

In considering these arguments, we review the trial court's grant of summary judgment de novo. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). We consider the factual record, and reasonable inferences that can be drawn from those facts, "in the light most favorable to the non-moving party" to decide whether "'the moving party [was] entitled to a judgment or order as a matter of law.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529, 540 (1995) (quoting R. 4:46-2(c)). Likewise, "[p]reemption determinations are reviewed de novo, as are the issues of statutory interpretation necessary to the

---

[2] Because both parties challenge the broader applicability of the Ordinance, and not any of the specific subsections voided by the court, we find no need to detail the specifics of the subsections deemed preempted.

preemption inquiry." In re Alleged Failure of Altice USA, Inc., 253 N.J. 406, 415 (2023).

Westfield argues its Ordinance is entitled to a presumption of validity and, for the first time on appeal, claims the trial court erred by using an as-applied analysis rather than a facial analysis when voiding the relevant subsections of the Ordinance. "[A]ppellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Berardo v. City of Jersey City, 476 N.J. Super. 341, 354 (App. Div. 2023) (internal quotation marks omitted) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). For the sake of completeness, we will address the issue and note it has been fully briefed by both parties.

Westfield stresses that PSE&G did not apply for a permit pursuant to the Ordinance prior to filing suit. It asserts PSE&G's suit must be assessed as a facial challenge to the Ordinance, and maintains the trial court erred by using an as-applied analysis. It claims, in order to benefit from an as-applied analysis, PSE&G was required to "apply for a permit and exhaust its administrative remedies before [Westfield] prior to seeking a judicial declaration that the

Ordinance was invalid." Only then could PSE&G possibly benefit from the legal test for an "as-applied" challenge to the Ordinance's validity. We disagree.

"Preemption is a judicially created principle based on the proposition that a municipality, which is an agent of the State, cannot act contrary to the State." Redd v. Bowman, 223 N.J. 87, 108 (2015) (quoting Overlook Terrace Mgmt. Corp. v. Rent Control Bd. of W. N.Y., 71 N.J. 451, 461 (1976)). Whether an ordinance is preempted is a distinct inquiry from whether it is unconstitutional, regardless of whether the analysis of the Ordinance is on its face or as applied. Compare id. at 109 ("If the 'field or subject matter' of the municipal ordinance and state law are not the same, there is no preemption; if they are the same, then the question of preemption is further explored." (quoting Overlook, 71 N.J. at 461)), with Abbott ex rel. Abbott v. Burke, 199 N.J. 140, 234 (2009) ("A statute may be declared unconstitutional in one of two manners. First, it may be declared invalid 'on its face.' Second, a statute may be found unconstitutional 'as-applied' to a particular set of circumstances.").

We need not reach Westfield's facial or as-applied argument because PSE&G did not challenge the constitutionality of the Ordinance. See Abbott, 199 N.J. at 234. Rather, PSE&G challenged the Ordinance to the extent it was preempted by Chapter 48 of the New Jersey statutes. We conclude In re Public

9

Service Electric & Gas Co. ("In re PSE&G"), 35 N.J. 358, 361 (1961) is directly on point and requires we affirm the trial court's finding that the voided subsections of the Ordinance are preempted by state law.

In re PSE&G involved the Borough of Roselle's efforts to regulate PSE&G's installation of high-capacity electric power lines in part by requiring the power lines be placed underground rather than on overhead structures. Id. at 372-73. Our Supreme Court invalidated the ordinance, reasoning a municipality's authority to regulate the actions of a public utility is limited to instances where the utility's proposed action seeks to serve only that municipality's residents. Id. at 372-73. Because Westfield does not contend the Project serves only its residents, its attempt to distinguish this matter from In re PSE&G is unavailing. We agree with the trial court the "[O]rdinance effectively prevents PSE&G from completing the [2017] Project as it regulates utility pole installation by regulating the precise pole placement, pole height, pole diameter, and pole material." Westfield's Ordinance cannot control in matters that require uniform treatment across various municipalities. As noted by our Supreme Court, "[i]t is rather difficult to conceive of a subject which more requires uniform regulation at a high and broad level of authority than the method of transmission of electric power." Id. at 373. It is undisputed the 2017 Project is

multi-jurisdictional.  Westfield's Ordinance is preempted by state law because PSE&G has a statewide requirement to furnish "safe, adequate and proper service" pursuant to N.J.S.A. 48:2-23, and the project seeks to upgrade power lines uniformly in several municipalities.  Although Westfield claims PSE&G must seek consent from it pursuant to N.J.S.A. 48:7-1, as aptly noted by the trial court that statute requires consent from the municipality in situations where the utility company seeks to service only local residents.

Further, that the Ordinance does not outright ban the placement of above-ground power lines is of no import, and does not render this case distinct from In re PSE&G, as Westfield posits.  The Borough of Roselle made two separate efforts to regulate PSE&G, where the second effort was predicated on the borough's police power and required PSE&G to install all electric power lines carrying more than 33,000 volts underground.  In re PSE&G, 35 N.J. at 363. "The first involved an amendment of the local zoning ordinance . . . . [which] required a utility to obtain a permit before erecting, in any zone in the borough, poles and towers for any transmission of electric current."  Id. at 361.  Roselle's ordinance stated no permit could be issued unless its zoning board and board of adjustment both found "the use in the case in question would not be detrimental

to the health, safety and general welfare of the community and is reasonably necessary for the convenience of the community." Id. at 361-62.

On the court's reading of Roselle's ordinance, overhead transmissions lines were thus permissible, "but only on specific allowance in each instance as a 'special exception' if standards set forth in the ordinance [were] met." Id. at 362 n.1. After the court disposed of Roselle's prohibition on above-ground power lines, it observed if "the prohibitory legislation is bad . . . it is difficult to see why the permissive regulation is not also basically invalid for the same reason." Id. at 374. Put simply, a municipality cannot "act in a field and in a way which is otherwise foreclosed to it by supervening state legislation or policy." Id. at 375.

This also disposes of Westfield's final attempt to distinguish this matter from In re PSE&G, by claiming PSE&G purportedly could have obtained an exemption if it had filed an application for a permit rather than challenging the Ordinance in court. Yet, that the Ordinance may not apply to PSE&G on the town's own terms is a mere restyling of the issue addressed in In re PSE&G: Westfield's authority is limited unless an electric company desires to service only local residents. Id. at 372-73. It lacks the authority to require PSE&G to seek a permit to replace the existing utility poles. Id. at 374. In fact, the

12

exemption's plain language underscores the necessity for preemption. Westfield is not obligated to grant the exemption, even in the face of violations of state or federal law; according to the language of the Ordinance, an exemption "may be granted" in those instances. PSE&G's statutory obligation requires uniformity in action and precludes coexisting municipal regulation when its activities exceed the scope of one municipality. To agree with Westfield would subject PSE&G to the vagaries of every municipality's whims and prevent it from meeting its state and federally-mandated obligations.

Undaunted, Westfield also argues it has contractual authority to regulate PSE&G, based on an agreement it made with PSE&G's predecessor, Suburban Electric, in 1892. It contends that agreement specifically reserved to Westfield the right to institute regulations constraining PSE&G's authority and to create a process to approve and regulate the terms of any PSE&G installation. Westfield further contends the Agreement was later "validated" by the New Jersey Legislature in 1898,[3] and is "still enforceable."

---

[3] The 1898 enactment provides, in pertinent part, that all actions taken by local governments to approve the construction of utility poles for electric light companies, and any contracts made with these companies to build such poles, are considered legal and valid. Taylor v. Pub. Serv. Corp. of N.J., 75 N.J. Eq. 371, 376 (Ch. 1909), aff'd, 78 N.J. Eq. 300 (E. & A. 1911).

The authority Westfield cites—a case from over a century ago, decided prior to the 1947 New Jersey Constitution that re-organized our judicial system and its precedential authority—does not provide support for its argument that its contractual agreement trumps preemption, nor does it obviate the ruling of In re PSE&G.

Public Service Corp. v. Town of Westfield, 80 N.J. Eq. 295 (Ch. 1912), aff'd o.b., 82 N.J. Eq. 662 (E. & A. 1914) did not purport to resolve the underlying dispute between PSE&G's predecessor and Westfield. Instead, Vice Chancellor Emery's opinion concluded by stating the utility company's complaint was grounded in a legal right, properly heard before a court of law, not equity. Id. at 304. Accordingly, if the company "desire[d] to take the opinion of a court of law upon the question of [its] legal rights, and [would] consent to appear and defend any action at law brought by the town to enforce removal," it could do so. Ibid. The rights of PSE&G's predecessor in interest vis-a-vis the town of Westfield were never substantively decided.

We conclude the portions of the Ordinance invalidated by the trial court are preempted. Those portions of the Ordinance conflict with New Jersey law requiring PSE&G to provide "safe, adequate and proper service" pursuant to N.J.S.A. 48:2-23 and N.J.A.C. 14:3-3.1. In re PSE&G, 35 N.J. at 371; see also

14

In re Valley Rd. Sewerage Co., 295 N.J. Super. 278, 287-88 (App. Div. 1996) ("Every public utility in this state is required to provide service to its customers that is safe, proper and adequate."), aff'd, 154 N.J. 224 (1998).

Also for the first time on appeal, Westfield contends there is a genuine issue of material fact precluding summary judgment as to whether the route chosen for the Supplemental Project is essential. Although we understand the BPU never found the route chosen by PSE&G for the Supplemental Project to be essential, that argument is not relevant to PSE&G's complaint seeking to invalidate the Ordinance on preemption grounds, which is the issue before us. The present matter pertains to whether Westfield's Ordinance is lawful, not whether PSE&G's Supplemental Project is lawful. We note that if Westfield wanted to challenge PSE&G's chosen route, it could have brought an action before the BPU, which has "general supervision and regulation of and jurisdiction and control over all public utilities . . . and their property, property rights, equipment, facilities and franchises so far as may be necessary for the purpose of carrying out the provisions of [Title 48]," N.J.S.A. 48:2-13(a), and such issues are best left "to the expertness and statewide authority of the [BPU] Commissioners." In re PSE&G, 35 N.J. at 370. Westfield chose not to do so, and instead raises this issue for the first time on appeal in an attempt to defeat

A-3602-22

summary judgment on the preemption of the Ordinance. We decline to address this issue not raised before the trial court, except to note it is inapplicable to the issue of whether preemption of the Ordinance, which attempted to regulate the height of power line transmission poles, was appropriate.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3602-22